# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JEFFREY MURPHREE,           ]<br>    Plaintiff,               ]<br>                              ]<br>v.                            ]<br>                              ]<br>CAROLYN W. COLVIN,           ]<br>COMMISSIONER, SOCIAL SECURITY]<br>ADMINISTRATION,              ]<br>    Defendant.              ]<br>                              ]<br>                              ] | CV-12-BE-1888-M |

## MEMORANDUM OPINION

This matter comes before the court on Plaintiff's "Motion to Alter, Amend, or Vacate Order Granting Summary Judgment and for Additional or Amended Findings," requesting that the court reconsider under Rules 52(b) and 59(e) its Amended Final Order granting summary judgment in favor of the Defendant.  (Doc. 41).  The Defendant filed a response.  (Doc. 42).  For the reasons stated in this Memorandum Opinion, the court FINDS that the motion is due to be GRANTED, and the court will further AMEND its prior Amended Memorandum Opinion (doc. 39) as discussed below.  However, for reasons stated below, the court FINDS that a reconsideration of this matter renders the same result; summary judgment is due to be entered in this case in favor of the Defendant Agency and against the Plaintiff Murphree, and the court WILL CONFIRM its Amended Final Order (doc. 40) to that effect.

## BACKGROUND

On March 4, 2014, the court entered an Order (doc. 33), with an accompanying Memorandum

1

Opinion (doc. 32), granting Defendant's motion for summary judgment (doc. 18) on every claim *except* the retaliation claims involving the Plaintiff's suspension in June of 2008 and his failure to receive the 2008 ROC award. (Doc. 33). On April 1, 2014, Defendant filed a timely motion for reconsideration challenging the denial of the motion for summary judgment on those two retaliation claims. (Doc. 34; *see* Fed. R. Civ. P. 52(b) & 59(e) both providing that the motions must be "filed no later than 28 days after the entry of the judgment). The Plaintiff filed no motion for reconsideration of that Order or of the findings in the Memorandum Opinion. On May 12, 2014, the court granted the motion for reconsideration (doc. 38), and upon reconsideration, determined that summary judgment was due to be entered in favor of the Defendant on the two remaining retaliation claims because the Plaintiff did not meet head on Defendant's legitimate business reasons for the two instances of discipline, and thus, did not meet his burden of establishing pretext. The court, therefore, entered an Amended Memorandum Opinion (doc. 39) and Amended Final Order (doc. 40) on May 12, 2014, entering summary judgment as to all claims. On June 9, 2014, the Plaintiff timely filed the current motion.

## STANDARD OF LAW

The Plaintiff brings this request for reconsideration under Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure. On Rule 52(b) motions, the court may make amendments of fact or additional findings of fact "whether or not an alteration of the *judgment* would be required if the motion is granted." *Williams v. Bolger,* 633 F.2d 410, 412 (11th Cir. 1980) (emphasis supplied). Rule 59(e) is a motion to alter or amend a judgment.

In determining what rule the Plaintiff's motion falls under, the court must look at the "type of relief requested" not by the labels the movant places on it. *Wright v. Preferred Research, Inc.,* 891

F.2d 886, 889 (11th Cir. 1990). "Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of a dispute," such as orders on motions for summary judgment. *Id.* Courts have found, however, that a Rule 52(b) motion is improper when the matter was decided on summary judgment. *See Orem v. Rephann,* 523 F.3d 442, 451 n.2 (4th Cir. 2008) *abrogated on other grounds as recognized by Sawyer v. Asbury,* 537 F. App'x 283 (4th Cir. 2013); *Silva v. Potter,* No. 804-CV-2542T17-EAJ, 2006 WL 3219232 (M.D. Fla. Nov. 6, 2006) (stating that "a Rule 52(b) motion to amend judgment is improper where the district court enters an order on a motion for summary judgment because the findings of fact on a summary judgment motion are not findings of fact in the strict sense that the trial court has weighed evidence and resolved disputed factual issues"); *Florham Park Chevron, Inc. v. Chevron U.S.A, Inc,* 680 F. Supp. 159, 161 (D.N.J. 1988) ("a district court does *not* engage in fact-finding within the meaning of Fed. R. Civ. P. 52 on a motion for summary judgment ... so defendant's motion pursuant to Fed. R. Civ. P. 52, for reconsideration or amendment of findings made in connection with the summary judgment motion is procedurally inappropriate."). Accordingly, the court FINDS that Rule 52 does not apply to the instant motion, and it will consider the request under Rule 59(e).

A motion to alter or amend under Rule 59(e) does not provide a mechanism for a dissatisfied party to re-litigate a matter. *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) ("A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment"). The Eleventh Circuit has recognized two grounds for granting a Rule 59 motion: "[1] newly-discovered evidence or [2] manifest errors of law or fact." *Id.* at 1343 (quoting *In re Kellogg,* 197 F.3d 1116, 1119 (11th Cir. 1999)). The Eleventh Circuit and a federal district court sitting in the Middle District of Alabama have recognized that an intervening

change in controlling law is also a ground for reconsideration and an exception to the law of the case doctrine.  *See, e.g., Summit Med. Ctr. of Ala., Inc. v. Riley,* 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003) (addressing a Rule 59 motion); *Oliver v. Orange Cnty., Fla.,* 456 F. App'x 815, 818 (11th Cir. 2012) (listing the following exceptions to the law of the case doctrine, allowing a district judge to reconsider a prior ruling:  "(1) new evidence; (2) an intervening change in the law that dictates a different result; or (3) that the prior decision was clearly erroneous and would result in manifest injustice.").

## ANALYSIS

As discussed in the Standard of Law section, the court FINDS that this motion is appropriately addressed under Rule 59(e), and that Rule 52 does not apply to its circumstances.  In his motion, Murphree does not present new evidence or an intervening change in the law. Therefore, having eliminated all *other* proper grounds for reconsideration under Rule 59(e), the court must assume that Murphree's reason for the motion to alter or amend its order is the existence of "clear error" that would result in manifest injustice. The court will address separately the arguments in each paragraph of his motion.

*1. Alleged Factual Error re Management of Albertville and Retaliation re Discipline of Garrison*

Murphree first points to the court's statement in the fact section of its opinion that Garrison "received a transfer from the Gadsden office to the Albertville office, which Murphree did not manage." (Doc. 39, at 3).  Murphree objects that this statement is inaccurate because he is the District Manager of the Gadsden, Alabama field office, which includes the Agency's offices in both Gadsden and Albertville.

The court notes that it only has access to the facts that the parties present to it. Murphree may well "manage" the Albertville office, but the facts presented to the court in the briefs did not spell that fact out, and Rule 56(c)(3) states that the court need only consider the cited materials. Fed. R. Civ. P. 56(c)(3). The facts in Defendant's original brief, which Murphree did not correct or clarify, reflected that Murphree serves as the Agency's "GS-14 District Manager (DM) in Gadsden Alabama" (doc. 19, at 3); referred to the *Albertville management* team as "DM Melissa Hill and OS Carla Edwards" and did not refer to Hill as an Assistant Manager under Murphree (doc. 19, at 17); and also referred to the management staff in the *Gadsden* office as including Murphree himself as well as the "Assistant District Manager (ADM) Teresa Lott (White) and Operations Supervisor (OS) Jacque Allen (African American)" (doc. 19, at 7). Those facts also indicate that Murphree had some supervisory relationship to the Albertville office (doc. 19, at 7), but did not state that he was part of the management team there.

Accordingly, the court is not convinced that the challenged statement is "clear" error based on the information presented to the court when it entered its Memorandum Opinion and Order on the motion for summary judgment. To the extent, if any, that the statement is a factual error, Murphree has not pointed the court to *evidence* in the record showing that it is clear error and explaining how Murphree could be the District Manager of both the Gadsden and Albertville office when the facts presented to the court list another District Manager of the Albertville office, Melissa Hill. The time to clear up any ambiguities in the facts presented was in the responsive brief to the motion for summary judgment, not the second motion for reconsideration; the court notes that Murphree did not bring this alleged error to the court's attention in the briefing on the Agency's motion for reconsideration.

However, in an abundance of caution, the court will GRANT the motion for reconsideration

and AMEND the "Amended Memorandum Opinion" (doc. 39) to provide an alternative ruling. That alternative ruling applies *to the extent, if any*, that the court's statement that Murphree did not manage the Albertville office is factual error. In Murphree's motion to alter or amend in the instant case, Murphree does not explain how the Memorandum Opinion's "error" in failing to list him as DM of the Albertville office as well as the Gadsden office is material to the entry of summary judgment against him, and so, in an attempt to "get it right," the court has attempted to figure out this issue without his guidance. On page 54 of the Memorandum Opinion, in the section addressing retaliation, the court noted that one proposed adverse retaliatory action—failing to discipline Garrison for claims of misconduct when Murphree requested that discipline, thereby undermining Murphree's authority—did not undermine Murphree's management authority because the inaction occurred after Garrison transferred to the Albertville office and was no longer under his authority. To the extent that Garrison remained under Murphree's management authority, as he now apparently claims, the court will address whether the Agency's failure to discipline Garrison under these circumstances would form the basis of a retaliation claim under the *McDonnell Douglas* framework.

Murphree asserts that the Agency should have disciplined Garrison for two instances of misconduct: (1) falsely accusing Murphree of sexual harassment; and (2) improperly denying a Social Security claim "just to get rid of it." (Doc. 21-11, at 31 pp. 122). Assuming *arguendo*, without deciding, that the Agency's failure to discipline Garrison for one or both of this "misconduct" constituted a materially adverse action against Murphree sufficient to establish a *prima facie* case, Murphree has not met head on the Agency's proffered non-retaliatory reasons for failing to discipline Garrison. The Agency's reason for not disciplining her for her accusations of sexual harassment was that it followed proper procedure: it investigated the accusations by instituting an independent

6

investigation of her charges and the report of the independent investigative committee did not recommend that she be disciplined. That team recommended that "additional corrective actions" be imposed on the management staff, but recommended none for Garrison. The Agency and Buehler, Murphree's supervisor, explained that in not disciplining Garrison for bringing the claims of sexual harassment, they were acting consistently with the recommendation of an independent investigative team, and the court notes that the team making those recommendations knew nothing about Murphree's protected conduct. Buehler testified that she did not understand from the report that the team specifically found Garrison had made false allegations. (Doc. 21-6, at 118). Accordingly, the Agency claims that the failure to discipline Garrison was not retaliation for Murphree's protected conduct.

Murphree does not meet this reason for failing to discipline Garrison head on and dispute it; he provides no logical explanation why the Agency had an affirmative obligation to discipline Garrison when the independent investigative team that was unaware of the protected conduct did not recommend that it do so, and further, why following an independent team's recommendation shows pretext. In addition, the sensitive nature of sexual harassment claims, and the often-private context in which the alleged misconduct arises means that definitive proof rarely exists either to establish or to rule out sexual harassment. Buehler testified about the Agency's awareness of the sensitivity of the situation when Agency personnel were making decisions about whether to discipline Garrison. Barnes also testified to his sensitivity to the "he said/she said" problem in sexual harassment claims, when corroboration of some allegations is difficult if not impossible. He stated "if you're getting at do we discipline people for making false allegations of sexual harassment, [in 41 years with the Agency, 22 of which he was on the Senior Executive service] I've never seen a single instance where

that has happened, and again, I think it's because it's so difficult to prove or disprove that all of the allegations are in fact false." (Doc. 21-4, at 19, p. 69).  Given the sensitive nature of sexual harassment and the desire to avoid the risk of Title VII retaliation lawsuits, companies and agencies are understandably reluctant to discipline employees who assert sexual harassment claims that turn out to be unsupported by evidence.

In the instant case, the investigative team found no corroboration of Garrison's claims that other employees were involved in Murphree's harassment or had been witnesses to it, but corroboration of some of the allegations involving private conversations between Garrison and Murphree would not have been possible.  Accordingly, investigation findings of "no evidence to support ... sexual harassment," are not equivalent to definitive findings that no sexual harassment occurred, even where the findings reflect that the accuser was not credible.  In light of the Agency's acknowledged awareness of the sensitivity of disciplining a person raising sexual harassment allegations, its decision is reasonable to follow the independent investigation team's recommendation that did not include discipline of Garrison.  Murphree has not met his burden to meet that explanation head on and show it is pretextual. He certainly provides no evidence that the company had previously disciplined employees bringing sexual harassment claims that were investigated and found to be unsupported by evidence, and, in fact, the undisputed evidence is to the contrary.

Murphree also challenges as retaliatory the Agency's failure to discipline Garrison for improperly denying a social security claim.  However, that discipline decision is also tied up, to some degree, with Garrison's allegations of sexual harassment.  At the time her misconduct came to light, Buehler agreed with Murphree that Garrison should be disciplined for that misconduct.  However, the Agency's non-retaliatory explanation for why the discipline did not *immediately* occur was that, about

the time the Agency was planning to exact that discipline, Garrison made a claim that Murphree sexually harassed her; Rhodes and Barnes, Buehler's supervisors, then determined that Garrison's discipline should be tabled pending an investigation of the sexual harassment claim.

The Agency's non-retaliatory explanation for not disciplining Garrison *after* the completion of the investigation was that months had elapsed since the misconduct, with Garrison's intervening claim of sexual harassment, and the Agency was aware of the "sensitivity of the situation" when discipline ensued after protected activity. (Doc. 21-6, at 30-31 &121). When the protected activity is a claim of sexual harassment, the sensitivity of the situation is even more challenging for all the reasons discussed above, and Barnes specifically testified that this sensitivity impacted his decision not to discipline Garrison for her social security claim misconduct.

Once again, Murphree has not rebutted the proffered non-retaliatory reasons head on with evidence of inconsistencies or contradictions to prove that they are pretextual. He has not, for example, provided evidence of other instances when Buehler and/or Barnes disciplined an employee for prior misconduct after the employee filed a sexual harassment claim. Murphree obviously disagrees with the decision to table Garrison's discipline regarding the social security claim misconduct, but an argument that the decision is wrong or unwise does not establish that it is pretext for retaliation. *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000) (stating that "[a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer [and] cannot succeed by simply quarreling with the wisdom of [the] reason" for the adverse employment action); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997) (stating that "court do not sit to second-guess the business judgment of employers [and] a plaintiff may not establish that an employer's proffered reason is pretextual merely

by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer").

Accordingly, the court will AMEND its "Amended Memorandum Opinion" (doc. 39) to enter the following *alternative* ruling on these retaliation claims:   to the extent, if any, that Murphree meets his *prima facie* case of retaliation on these claims, the court FINDS that the Agency has articulated a legitimate, non-retaliatory reason for the alleged retaliation; and that Murphree has not met his burden to prove pretext.

   *2. Dispute Regarding Buehler's Statements about Alabama DAD Position*

Murphree next challenges the court's finding that "[a] dispute exists whether Buehler advised Murphree that she would like him to be her DAD and planned to recommend him for the position...." (Doc. 39, p. 5).  Murphree points out that Gail Earley supports Murphree's side of the dispute.  The court agrees and said so in the Memorandum Opinion; the Memorandum Opinion's fact section referred to Earley's affidavit testimony about Buehler's statement to her that she intended to talk to Barnes about placing Murphree in that position, but the Memorandum Opinion also stated that the facts presented "do not reflect whether this conversation occurred before or after Buehler learned that Wilson would also be a candidate."  *Id.*  However, the court notes that regardless of whether Earley supports Murphree's side, Buehler disagrees with their testimonies, and a dispute therefore exists, so the court's statement that a dispute exists is not a factual error.

The court further notes that the testimonies of both Murphree and Earley refer to Buehler's statements about what Buehler intended to do *in the future* and not what she had already done.  So, viewing factual disputes in the light most favorable to Murphree, the court accepted those testimonies that Buehler told them that she intended at the time of those conversations to recommend Murphree

for the DAD position at a later date. But stating that one intends to do something in the future is not the same as stating an accomplished fact; circumstances change, people change their minds, and people are not always candid about stating their true intentions. So, Buehler's statement that she intended to recommend Murphree is not evidence that she actually did recommend him at that future date.

The court FINDS that Murphree has not identified manifest error. And, even assuming *arguendo* that an error in fact exists, Murphree does not explain how this fact—that Buehler told Murphree and Earley she intended in the future to recommend him for the Alabama DAD position—would change the outcome of the court's ruling. The court dismissed the claim regarding the Alabama DAD position selection because Murphree did not administratively exhaust that claim, and the court FINDS that this identified "error" is not relevant or material to that ruling.

    3. *Tennessee DAD*

Murphree also challenges as error the court's grant of summary judgment on the claim regarding the Tennessee DAD position. While Murphree's argument is not completely clear, the court will do its best to address it. Murphree appears to challenge the following statement in the Memorandum Opinion: "The evidence does not reflect that, prior to the selection of Wilson as Alabama DAD, the Agency performed similar DAD selections on a competitive basis in other states." (Doc. 29, at 7). Murphree points to Clevinger's testimony that she *could have* advertised to competitively select a candidate for the Tennessee DAD position in 2008 if she had wanted to do so, *but she did not use the competitive selection process;* she made the decision to place Esther Carpenter in the Tennessee DAD position without using a competitive process. That testimony that Clevinger *could have* used the competitive process in DAD selection, but did not do so, fails to support an

argument that the Agency had actually performed similar DAD selections on a competitive basis in other states.  Thus, the court sees no error in the challenged statement.

Further, Murphree states that "Clevinger recommends but Barnes decides," citing his own brief and the depositions of Barnes and Clevinger.  The deposition testimonies of both Clevinger and Barnes state that Clevinger was the person who selected Carpenter for the DAD position and that Barnes agreed with Clevinger's choice. (Doc. 21-4, at 22, pp. 83-84; Doc. 21-23, at 65-66).  The statements of fact point the court to no contrary *evidence* given by a person with personal knowledge. Accordingly, Murphree's arguments fail because they are based on the unsupported assumption that Barnes and not Clevinger made the choice regarding who would fill the Tennessee DAD position.

The court FINDS that Murphree has not identified manifest error in this paragraph.

4.  *Alleged Inconsistencies in Buehler's Testimony*

The quotations from the Memorandum Opinion that Murphree points to in this paragraph all refer to Buehler's statements in her affidavit or deposition testimony.  The court set out Buehler's testimony in the facts, and noted where a dispute existed between her testimony and that of Murphree and between her testimony and that of Earley.  Accordingly, the court understands that Murphree is *not* claiming that the Memorandum Opinion inaccurately set out Buehler's testimony.  Rather, the court understands that Murphree is asserting that Buehler's testimony, while accurately recounted, is incorrect or inconsistent, and that the Memorandum Opinion erred in failing to acknowledge those problems. The court will address the alleged incorrect and inconsistent statements.

Murphree argues that Buehler's testimony is inconsistent in that she testified in her EEO affidavit "that she was **not** aware of Murphree's allegations of discrimination as to the Alabama DAD selection when she suspended him on May 30, 2008," but, on the other hand, she testified in that same

affidavit and her deposition that she became aware of his allegations on April 22, 2008 when she received an email from Leon Rhodes.

A careful reading of Buehler's testimony does not indicate that she truly contradicts herself in a way that logically and reasonably raises integrity issues. Buehler's affidavit does say at one point: "Mr. Murphree's race had no bearing on my decision. I was not aware at the time of his suspension of Mr. Murphree's allegations of discrimination." During this paragraph, Buehler was discussing her *decision* to suspend Murphree and the reasoning supporting that decision based on the investigative report. Then, later on the same page of the affidavit she states that she "was not notified of his allegation of discrimination until April 21, 2008." (Doc. 21-2, at 5). Because the suspension did not take place until June of 2008 but the initial *decision to suspend* occurred in late March or early April of 2008[1], and because the affidavit proceeds in chronological order, the reasonable way to reconcile these statements occurring on the same page is a determination that she meant to say "I was not aware at the time I made the suspension *decision* of Mr. Murphree's allegations of discrimination." Murphree characterizes this discrepancy as a lie, but the fact that it occurs on the same page of a written affidavit and its context logically suggests inartful wording. Interpreting those words as intentional prevarication makes no sense.

In Buehler's other testimony, she consistently states that she became aware of Murphree's allegations when she received the Rhodes email on April 21 or 22[2], 2008 notifying her that Murphree had filed an EEO complaint. (Doc. 21-5, at 96-97 p. 95-96; at 109-111, p. 108-10). Buehler and

---

[1] In May of 2008, the length of the suspension was modified from two days to one, after Murphree objected to the discipline.

[2] The actual email is dated April 22, 2008. (Doc. 21-21, at 2).

Wilson initially made the decision at the end or March or beginning of April 2008 to suspend Murphree (doc. 21-6, at 45-45 pp. 219-20), although Murphree objected to the suspension and Buehler subsequently reduced the suspension from two days to one.

The court reiterates that while it must view the facts in the light most favorable to the Plaintiff, it need not accept his characterization of the meaning and import of those facts when logic does not support that characterization; this argument does not raise a genuine issue of material fact. The court FINDS no support for his arguments of clear error or manifest injustice as asserted in paragraph 4.

5. In this paragraph of his motion, Murphree quotes the language of *Standard v. A.B.E.L Services, Inc.,* 161 F.3d 1318, 1332 (11th Cir. 1998) discussing a plaintiff's burden to establish pretext within the *McDonnell Douglas* framework. While this quote is accurate, it is not new law and it is not contrary to the law quoted in the Memorandum Opinion. Given that the case does not represent intervening change in controlling law, Murphree does not explain why the case supports his motion to alter or amend; he does not apply this law to the facts of this case or otherwise explain how it reveals clear error or manifest injustice. Accordingly, the court FINDS no support for his arguments of clear error or manifest injustice as asserted in paragraph 5.

6. In this paragraph, Murphree cites, for the first time, the case of *Smith v. Lockheed-Martin Corp.,* 644 F.3d 1321, 1328 (11th Cir. 2011) and asks the court to analyze the facts in this case— particularly what he characterizes as Buehler's false testimony—as presenting "a convincing mosaic of circumstantial evidence" sufficient to establish a jury issue on race discrimination and retaliation. The court notes that *Lockheed-Martin* is a 2011 opinion and does not represent an intervening change in law that dictates a different result and that would justify reconsideration. Because the parties chose in their briefs to analyze the issues under the *McDonnell Douglas* framework and did not also request

14

analysis under *Lockheed-Martin's* "convincing mosaic of circumstantial evidence," the court used the *McDonnell Douglas* analysis in its original Memorandum Opinion. Murphree should have cited *Lockheed-Martin* and presented arguments under that analysis in his responsive brief instead of citing it and relying on it for the first time in his Motion to Alter.

To the extent Murphree relies on a mosaic of discrimination theory, he must present the tiles and create the mosaic instead of expecting the court to piece it together for him. "The [c]ourt does not bear the burden of discerning this evidence for him, and federal courts do not 'guess' at what a litigant might mean." *King v. ST Aerospace Mobile, Inc.,* No. 12-CV-0360-WS-B, 2013 WL 2635926, at *18 (S.D. Ala. June 11, 2013). After *Lockheed-Martin,* the Eleventh Circuit continues to apply the *McDonnell-Douglas* framework and affirm grants of summary judgment when plaintiffs do not meet their *prima facie* case under it and when plaintiffs do not present a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination or retaliation. *See, e.g., Giles v. Daytona State College, Inc.,* 542 F. App'x 869, 872-73 (11th Cir. 2013) (affirming grant of summary judgment where plaintiff failed to meet her *prima facie* case by demonstrating that defendant treated similarly situated employees more favorably and failed to create a triable issue concerning defendant's discriminatory intent); *Turner v. Fla. Prepaid College Bd.,* 522 F. App'x 829, 832-33 (11th Cir. 2013) (affirming the grant of summary judgment on the race discrimination claim where the plaintiff failed to present a similarly situated comparator and stating "we have never suggested that a plaintiff's generalized averment that her employer treated her differently than employees of a different race can, alone, create a 'convincing mosaic of circumstantial evidence' from which a jury could find intentional discrimination").

In any case, the only specific mosaic tile that Murphree provides in his Motion to Alter to

create a "convincing mosaic" is "Buehler's false testimony at the outset of the EEO investigation," presumably referring to his argument that Buehler's testimony was inconsistent about when she first learned of Murphree's discrimination claims. The court has addressed that argument above, finding no logic to the assertion that Buehler gave false testimony.

In short, the court FINDS that Murphree has failed to present to the court a timely argument that "a convincing mosaic of circumstantial evidence" exists, and, even if the mosaic argument were timely, that argument in paragraph 6 of the Plaintiff's motion has failed to create a genuine issue of material fact concerning the Agency's alleged discriminatory or retaliatory intent, and has not identified clear error or manifest injustice.

7. Finally, Murphree argues that this court "misconstrued the slight reduction of Plaintiff's suspension from two days to one by Buehler as being a significant and legitimate change made in good faith by Defendant." (Doc. 41, at 6). The court understands that Murphree feels his discipline was unfair. However, the court's role is not to sit as "'a super-personnel department'" to re-examine the employer's business judgments and second-guess whether they were fair and appropriate. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (quoting *Lee v. GTE Fla, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2001). Rather, this court's role is to determine whether the termination, unfair or not, was *discriminatory* and/or *retaliatory.*

In this case, an independent investigative team found that Murphree engaged in inappropriate conduct, and that Buehler disciplined him as a result of that finding. In quarreling with the wisdom and reasonableness of the discipline, Murphree misses the point and misconceives the role of this court and the judicial system as a whole in a discrimination and retaliation suit. *See Kidd,* 731 F.3d at 1206 (stating that a plaintiff "cannot succeed by simply quarreling with the wisdom of that reason" proffered by the employer for the adverse employment decision). The court points to but will not

reiterate the discussion in its Amended Memorandum Opinion of the unfair discipline pretext issue (doc. 39, at 57-64).  To the extent that Murphree repeats his argument in this paragraph that Buehler was caught in a lie, the court has already addressed that argument.

The court FINDS no support for his arguments of clear error resulting in manifest injustice as asserted in paragraph 7.

In sum, the court FINDS that its previous Amended Final Order (doc. 40), granting the Agency's  motion for summary judgment in its entirety and entering summary judgment on all claims in this lawsuit, was appropriate, and that any error made does not change the appropriateness of that Order.  Accordingly,  the court WILL CONFIRM that Order.

Dated this 13th day of February, 2014.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE